PROVENCHER & FLATT LLP
Douglas B. Provencher (CSB No. 77823)
823 Sonoma Avenue
Santa Rosa, CA 95404-4714
Telephone: (707) 284-2380
Facsimile: (707) 284-2387

Attorneys for PNC Bank

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re:

RICHARD STERBA and OLGA STERBA

Debtors.

Case No. 13-10245

Chapter 7

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CLAIMANT'S BRIEF IN OPPOSITION TO DEBTORS' OBJECTION TO CLAIM NUMBER 1

Date: November 14, 2013
Time: 10:00 am
Courtroom: 99 South E Street
Santa Rosa, CA 95404

The claimant request the court take judicial notice of the following document in the court's file.

Claim Number 1 filed April 19, 2013. A copy of which is attached as Exhibit A.

Dated: November 7, 2013

Provencher & Flatt LLP

Douglas B. Provencher 77823

1

# Exhibit 1

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT Northern DISTRICT OF California | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor:<br>RICHARD & OLGA STERBA | Case Number:<br>13-10245 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>PNC Bank | |
|---|---|
| Name and address where notices should be sent:<br>PNC Bank<br>PO Box 94982<br>Cleveland, OH 44101 | **COURT USE ONLY**<br>☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(*If known*) |
| Telephone number: email:<br>1-866-622-2657   EXT 63261 | Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**   $42,006.38

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** MONEY LOANED
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>7741 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____

Annual Interest Rate_____ % ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim:   $_____

Amount Unsecured:   $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Judy Borkey**
Title: **Bankruptcy Specialist**
Company: **PNC Bank**
Address and telephone number (if different from notice address above):

/s/ Judy Borkey   4/18/2013
(Signature)   (Date)

Telephone number:   email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

| DEFINITIONS | | INFORMATION |
|---|---|---|

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.), and any applicable orders of the bankruptcy court.

This document was prepared by GINA DURKAY National 
6750 Miller Road Brecksville, OH 44141
Please return this document after recording to:

NCB, CLS BRECKSVILLE
DOCUMENTATION, LOCATOR 7120
6750 MILLER ROAD
BRECKSVILLE, OH 44141

 **2007039387**
OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

NORTH BAY TITLE CO
04/06/2007 11:41 TRD       **8**  PGS
RECORDING FEE: 28.00
PAID



_____ State of California _____ _____ Space Above This Line For Recording Data _____

## DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is March 30, 2007.
   The parties and their addresses are:
   TRUSTOR: RICHARD STERBA and
   OLGA STERBA

   1592 MANZANITA AVE SANTA ROSA, California 95404

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
   TRUSTEE: National City Bank

   LENDER: NATIONAL CITY BANK

   This Deed of Trust is junior in lien and subordinate to that certain Deed of Trust dated 03/01/07, in the amount of $340,000.00, in favor of Bank of America, and recorded concurrently herewith, Sonoma County Records.

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
   SEE ATTACHED EXHIBIT

   The property is located in Sonoma ............................ at ..............................
   (County)
   3851 SEBASTOPOL RD # 206AW , SANTA ROSA , California 95407
   (Address)                        (City)                              (ZIP Code)
   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 42,450.00 . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interes'* _____ _____ *maturity dates, etc.)*

STERBA
MORTGAGEDEED

Maturity Date: 3/30/2022

CALIFORNIA - DEED OF TRUST (NOT  
© 1994 Wolters Kluwer Financial Services - Bankers S)
VMP ®-C165(CA) (0605)

RS (page 1 of 6)

Case 13-10245    Claim 1-1 Part 2    Filed 04/19/13    Desc Exhibit    Page 1 of 5
Case: 13-10245    Doc# 66    Filed: 11/08/13    Entered: 11/08/13 11:37:03    Page 6 of 15

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
    A. To make all payments when due and to perform or comply with all covenants.
    B. To promptly deliver to Lender any notices that Trustor receives from the holder.
    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0605)

*RS* *(page 2 of 6)*

Case 13-10245    Claim 1-1 Part 2    Filed 04/19/13    Desc Exhibit    Page 2 of 5
Case: 13-10245    Doc# 66    Filed: 11/08/13    Entered: 11/08/13 11:37:03    Page 7 of 15

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0605)

29. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:
    ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
    ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
    ☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
        ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ...............
    ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

*Richard Sterba* 4/4/07          *Olga Sterba* 4/4/07
(Signature)         (Date)    (Signature)        (Date)
RICHARD STERBA                 OLGA STERBA

**ACKNOWLEDGMENT:**
(Individual) STATE OF California, COUNTY OF Sonoma } ss.
On this 4th day of April, 2007 before me J. Roberts, a notary public, personally appeared Richard Sterba and Olga Sterba personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

See attached
Signature ........................................
         Name (typed or printed)

(Seal)
                My commission expires: ........................................

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of .................... County, State of California, in book ............, page ........ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ........................................    ........................................

Assessor's Identification Number ........ - ........ - ........

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006    (page 6 of 6)
VMP ®-C165(CA) (0605)

Situated in the State of California, City of Santa Rosa, County of Sonoma, and described as follows:

A Condominium comprised of:

**Parcel One**

An undivided 1/48 interest in and to Lot 1, as shown upon that certain map entitled, "Village Square at Courtside Village, Unit 2," filed for record October 11, 2005 in Book 682 of Maps, at Pages 31 through 37, inclusive, Sonoma County Records and as shown upon the Condominium Plan and Declaration of Annexation recorded January 13, 2006 under Document No. 2006005333, of Official Records of Sonoma County.

Excepting therefrom Units U1 through U34, inclusive, and C1 through C14, inclusive, as shown upon the filed map referred to herein.

Reserving therefrom as appurtenant to the units as set forth on the filed map and Condominium Plan referred to herein the exclusive rights to use all areas designated as parking, patios, decks, stairways, garages, elevators, utility rooms, community rooms and storage rooms.

**Parcel Two**

Unit(s) 8, as shown upon the filed map and Condominium Plan referred to herein.

**Parcel Three**

The exclusive right to use that portion of Lot 1, designated as parking, patios, decks, stairways, garages, elevators, utility rooms, community rooms and storage rooms as appurtenant to the unit described in Parcel Two hereinabove, as set forth on the filed map and Condominium Plan referred to herein.

MORTGAGEDEED_A



National City®

**FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT – National Home Equity**
(Not to be Used for Texas Homestead Loans Unless Purchase Money or Refinance of Purchase Money)

Date __3/30/2007__

1. DEBTOR(S)  RICHARD STERBA
              OLGA STERBA

   Address    3851 SEBASTOPOL RD # 206AW
              SANTA ROSA, California 95407

2. DEFINITIONS AND GENERAL TERMS. "You" or "your" means the undersigned Debtors. "We", "our" or "us" means National City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. Property means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

3. PROMISSORY NOTE. For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $__42,450.00__, which includes a prepaid finance charge of $__1314.00__, plus interest from the date of this Note on the principal sum outstanding and other sums owed under this Note at the per annum rate of __9.500__%, payable as described in the payment schedule in the Disclosure Statement. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding them to the principal balance of this Note. Interest will be computed on a simple interest basis based upon a 365-day year, but calculated on actual days. Accordingly, your payment history could affect the amount you will pay under this Note.

4. PROPERTY   3851 SEBASTOPOL RD # 206AW
              SANTA ROSA, California 95407

5. DISBURSEMENT OF PROCEEDS. You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

6. LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFFERAL CHARGE; DOCUMENT REQUEST CHARGE. If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. This late charge will be the greater of 10% of the unpaid monthly payment or $40. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge. This returned instrument charge will be $25. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be $6 per copy. We will not charge you for documents we are required to provide you by law.

7. INSURANCE. You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and will be responsible for its loss or damage. You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us, provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverages at your expense which we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any other insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. Our mailing address for purposes of this Section is P.O. Box 91596, Cleveland, OH 44101-0351. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

8. PREPAYMENT. You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full, you agree to pay a voluntary prepayment charge which will be equal to the greater of __0__% of the principal balance at the time of prepayment or $__0.00__. You will only be charged this voluntary prepayment charge during the first __0__ months of this Note. If we accelerate the entire balance owing under this Note due to your default, you agree to pay an involuntary prepayment charge which will be equal to $__150.00__. No portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

9. SECURITY AGREEMENT. To the extent permitted by law you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note and (except for the Property if it is a principal residence) your obligations under any other agreement with us or our affiliates: (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; (c) all of your deposit accounts with us or our affiliates (except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property.

10. PROPERTY MAINTENANCE AND USE. You will promptly pay all fees, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral. You will not use, or permit others to use, the Property (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

11. DEFAULT AND REMEDIES. You will be in default under this Note if (a) you fail to make any payment or pay other amount owing under this Note when due; (b) you fail to keep any of your agreements under this Note or under any other agreement with us or our affiliates; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated (f) the Property or any other property for which we or our affiliates possess a security interest is lost, stolen, destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings, or (g) you are in default on any obligation that is secured by a lien on the Property. If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. You will pay us interest on this balance at the rate set forth in this Note including after default and acceleration and after any judgment, (bb) demand that you vacate the Property and make it available to us at a time which is reasonably convenient. You agree to comply with such demand, (cc) sell, lease, or otherwise dispose of the Property. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law; and/or (ee) setoff any of your deposit accounts with us or our affiliates (except individual retirement accounts) without demand or notice.

12. PROPERTY CONDITION. You agree that with respect to any Property (a) it is free from all material defects, in proper operating order and fit for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of them as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (e) we are not a seller, supplier, merchant or warrantor. Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility

13. ADDITIONAL AGREEMENTS. You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such rights; (e) the provisions of this Note are only to the extent permitted by applicable law. Any part of this Note which cannot be enforced will be void, but the remaining parts will remain in effect; (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can correct errors in this Note as provided in 15 U.S.C. 1640 upon notice to you even if they are contract terms and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Note to correct errors in the Note. You can change any term of this Note only in a writing signed by us; (i) the Bank is a national bank located in Ohio and Bank's decision to make this Loan to you was made in Ohio. Therefore, this Note shall be governed by and construed in accordance with (i) Federal laws and regulations including but not limited to 12 USC § 85 and (ii) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements. An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address. Except as otherwise specified, all notices and payments to us must be sent to P.O. Box 5700, Cleveland, OH 44101-0570, or such other place as we may designate. Our failure or delay in providing you billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that they are authorized to enter into and execute this Note; (o) we will not be responsible for any personal items in or on vacated Property. We will make a reasonable effort to return such items to you or have you reclaim them from us provided you notify us within 5 business days of our taking possession and itemize such items. Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession; (p) we may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107. If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments or other proceeds will be deemed reasonable unless another method is required by law, in which case that method will be deemed reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, account number and social security number; (t) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (u) we are authorized to sign on your behalf any document required to enforce our interests under this Note; (v) disclosures included in this Note but not required by law are not an admission or waiver of rights by us; (w) all actions under this Note requiring our consent are at our sole discretion, and such consent may be withheld for any reason; (x) our typewritten name in Section 2 will constitute our signature for purposes of this Note; (y) we have an established business relationship with you, and unless otherwise prohibited by law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service; (z) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD1/HUD1A provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; (aa) all amounts owed under this Note will be without relief from valuation and appraisement laws; (bb) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations; and (cc) In this Note, the term "affiliates" means current and future affiliates of National City Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co.

14. ADDITIONAL NOTICES. The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notice to Cosigner*, "bank" means us

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

## NOTICE TO ALL SIGNERS

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

If the Property is located in California. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property

If the Property is located in Colorado: The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received

If the Property is located in Florida. Florida Documentary Stamp Tax in the amount required by law has been paid or will be paid directly to the Department of Revenue, and Florida Documentary Stamps have been placed on the taxable instruments as required by Chapter 201, Florida Statutes.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER. 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and in accordance with law you will not be entitled to receive a refund of unearned charges. 4. If you prepay the unpaid balance, you may have to pay a prepayment penalty

If the Property is located in Iowa and the principal amount of this Loan exceeds $20,000: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT

If the Property is located in Maryland. We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota. If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01

If the Property is located in Missouri. Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York. YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT

If the Property is located in North Dakota. THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW

If the Property is located in Oregon: NOTICE TO THE BORROWER. Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER. YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If the Property is located in Wisconsin. NOTICE TO CUSTOMER. (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU WILL NOT BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

NHEFRN3 (07/04)

Case 13-10245 Claim 1-1 Part 3 Filed 04/19/13 Desc Exhibit 3 Page 3 of 4
Case: 13-10245 Doc# 66 Filed: 11/08/13 Entered: 11/08/13 11:37:03 Page 13 of 15

15. SIGNATURES. YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE INCLUDING THOSE ON PAGES 1 THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH IS INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1 SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

RICHARD STERBA
Type or print name of Debtor

X /s/ Richard Sterba
Debtor's signature

OLGA STERBA
Type or print name of Debtor

X /s/ Olga Sterba
Debtor's signature

_____
Type or print name of Debtor

X_____
Debtor's signature

_____
Type or print name of Debtor

X_____
Debtor's signature

N/A

FOR MICHIGAN GUARANTORS ONLY Guaranty Agreement. For value received, you the undersigned guarantors jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below

_____
Type or print name of Guarantor

X /s/ Richard Sterba
Guarantor's signature

_____
Type or print name of Guarantor

X /s/ Olga Sterba
Guarantor's signature

©2004 National City Corporation

NHEFRN4 (07/04)


# PNCBANK

CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Secretary of PNC Bank, National Association does hereby certify as follows:

1. National City Bank was a wholly owned subsidiary of National City Corporation.

2. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

3. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

4. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.), having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Association this 6th day of November, 2009.

Janet L. Deringer



Member of The PNC Financial Services Group

One PNC Plaza 249 Fifth Avenue Pittsburgh Pennsylvania 15222 2707